1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TARA ANN SHERWIN,

          Plaintiff,

v.

INFINITY AUTO INSURANCE
COMPANY, et al.,

          Defendants.

2:11-CV-43 JCM (VCF)

**ORDER**

Presently before the court is defendant Infinity Auto Insurance Company's motion to bifurcate trial pursuant to Federal Rule of Civil Procedure 42.  (Doc. #84).  Plaintiff Tara Ann Sherwin has filed an opposition (doc. #85)[1], to which Infinity has replied (doc. #86).  Infinity seeks to bifurcate the trial of Sherwin's claims for breach of contract from her claims of bad faith and violations of the Nevada Unfair Trade Practices Act.

. . .

. . .

---

[1] Sherwin's opposition is primarily devoted to arguing that this court has already ruled, ex ante, on the motion to bifurcate.  The order to which the opposition refers, regarded severance of claims.  It discussed the relation of the contractual and bad faith claims within the context of Federal Rule of Civil Procedure 54(b), not Rule 42(b).  Sherwin has taken this court's statement that "the bad faith causes of action are not separate and distinct claims" out of context, as that statement went on to explain that the bad faith causes of action were "alternative legal theories of recovery," as defined in *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695 (9th Cir. 1961), for purposes of severance and distinguishing "claims" from "causes of action."

**James C. Mahan**
**U.S. District Judge**

**Facts**

On March 31, 2009, Sherwin was injured in an automobile collision, when the vehicle she was driving was struck by Manuel Flores-Rubio.  Sherwin presented a claim to Flores-Rubio's insurance carrier and accepted the policy limit of $15,000 to settle the claim.  Sherwin's own insurance policy with Infinity provided her with Uninsured/Underinsured Motorist Coverage ("UIM") with coverage limits of $15,000 per person and $30,000 per accident.

Sherwin presented a claim to Infinity requesting the UIM policy limit of $15,000.  In a letter to Infinity dated December 30, 2009, Sherwin asserted that she had already incurred $11,543 in special damages and attached records from her treating physician, Dr. Andrew Cash.  After evaluating Sherwin's condition, Dr. Cash recommended she undergo fusion surgery on her spine or face an increased risk for "catastrophic [re]injury" and paralysis.  Dr. Cash estimated that this surgery would cost approximately $150,000.

Infinity admits that it assigned the third party involved in the accident 100% liability, and acknowledges that Sherwin has, at least to some extent, been injured in the collision.  (*See* doc. #20, Exhibit 1-E, p. 6; *see also* doc. #16, p.2).  Infinity initially offered Sherwin $3,183, which Sherwin does not dispute was tendered or cashed.  However, because Infinity offered this amount prior to conducting an investigation of its own, Sherwin maintains that this was a "nuisance offer" intended to entice Sherwin to settle without seeking further recourse.  Thus, Sherwin brought claims alleging that Infinity acted in bad faith when it failed to conduct a full investigation, including an independent medical examination, *prior* to its initial offer of $3,183.

After making the alleged "nuisance offer" Infinity hired Dr. Anthony Serfustini to conduct a thorough medical examination of Sherwin and determine whether the fusion surgery was required.  Dr. Serfustini concluded that the extent of Sherwin's injuries was not as serious as opined by Dr. Cash and questioned her need for the surgery.  In support of his opinion, Dr. Serfustini noted that Sherwin had since returned to work as a dancer on the Las Vegas Strip.

Sherwin filed suit against Infinity, alleging that Infinity's refusal to properly compensate her amounted to a breach of the insurance agreement (first cause of action); a contractual breach of the

**James C. Mahan**
**U.S. District Judge**

implied covenant of good faith and fair dealing (second cause of action); a tortious breach of the implied covenant of good faith and fair dealing (third cause of action); bad faith tort (fourth cause of action); and an unfair trade practice (fifth cause of action). *See* Amended Compl. ¶¶ 23, 30, 38, 43, and 48.

Infinity argues that Sherwin's breach of contract cause of action is a necessary prerequisite to the bad faith causes of action. In essence, Infinity argues that if it has not breached the insurance agreement, it cannot be found to have acted in bad faith. Accordingly, Infinity seeks to bifurcate the contractual cause of action from the remaining causes. Infinity contends that trying all the causes of action together will serve to prejudice Infinity and waste the court's and parties' time and resources.

**Discussion**

Federal Rule of Civil Procedure 42(b) grants courts the authority to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Courts may order separate trials to achieve "convenience, to avoid prejudice, or to expedite and economize" the proceedings. *Id.* Decisions regarding bifurcation are left to the trial court's discretion. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982)

Bifurcation is appropriate when it simplifies the issues for the jury and avoids the danger of unnecessary jury confusion. *Id.* Bifurcation is particularly appropriate when resolution of a claim or issue might dispose of the entire case. *See O'Malley v. United States Fidelity and Guaranty Co.*, 776 F.2d 494, 501 (5th Cir. 1985) (bifurcation was proper because resolution of contractual claim disposed of bad faith claims).

(a) *Nevada Law Regarding the Relationship Between an Insurer's Contractual and Tort Liability*

Prior to turning to the Rule 42(b) factors, the court will first analyze whether bifurcation is mandated by Nevada law. Infinity argues that under Nevada precedent, Infinity's liability on the contractual claim is a necessary prerequisite for liability on the bad faith claims. If it is, then it is likely more expedient to try the contractual claim first, as a verdict in favor of Infinity will

**James C. Mahan**
**U.S. District Judge**

- 3 -

1   negate the need to try the bad faith claims.

2          In *Martin v. State Farm Ins. Co.*, 960 F. Supp. 233 (D. Nev. 1997), a court in this district

3   explained that many courts have held that bad faith claims against an insurer arising from a

4   dispute over UIM coverage either do not exist, or must be held in abeyance until the contractual

5   coverage claim is resolved.  *Id.* at 236.  However, in *Albert H. Wohlers & Co. v. Bartgis*, 114

6   Nev. 1249 (1998), the Nevada Supreme Court addressed this precise issue and voiced its

7   disagreement with one of the cases relied upon by the court in *Martin*.  The Nevada Supreme

8   Court explained that although

9          some jurisdictions have adopted the directed verdict rule, *see, e.g., National
           Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982) (explaining
10         that in order to establish a prima facie case of bad faith, the plaintiff must proffer
           sufficient evidence demonstrating that the plaintiff is entitled to a directed verdict
11         on the contract claim), the rule adhered to by a vast majority of jurisdictions is
           that a plaintiff need not establish that it is entitled to a directed verdict on the
12         contract claim in order to establish a prima facie bad faith claim.  We believe that
           the majority rule represents the more reasoned approach and, thus, we decline to
13         adopt the directed verdict rule.

14  *Id.* at 1257 n.2.

15         The discussion in *Albert H. Wohlers* makes clear that Nevada does not require that a

16  plaintiff establish success on a contractual claim prior to proceeding with a bad faith claim.

17  Infinity's citation to *Pulley v. Preferred Risk Mut. Ins. Co.*, 111 Nev. 856 (1995) for the

18  proposition that bad faith claims against an insurer are premature until after the contractual

19  claims are resolved is misplaced.  In *Tracey v. Am. Fam. Mut. Ins. Co.*, 2010 WL 3613875 (D.

20  Nev. Sep. 8, 2010), this court explained that in *Pulley*, the plaintiff's allegations of bad faith

21  rested on facts that *had not occurred* until after the breach of contract claim was settled.  *Id.* at

22  *5.  Thus, *Pulley* does not establish the rule Infinity requests this court to enforce:  that breaches

23  of contract are legally antecedent to bad faith causes of action.

24         The facts in *Tracey*, are strikingly similar to the factual scenario presented in the instant

25  dispute.  In *Tracey*, as here, the court was presented with a breach of contract claim regarding an

26  insurer's failure and refusal to pay a policy limit under the insured's UIM policy.  The insured

27  was involved in a motor vehicle accident, when the tortfeasor attempted to make a u-turn and

28

James C. Mahan
U.S. District Judge                                      - 4 -

1   collided with the insured. *Id.* at *1. The tortfeasor's insurance policy provided only $15,000 in

2   liability coverage per person. This $15,000 limit was promptly paid to the insured. Plaintiff then

3   sought to recover the balance of her damages from her own insurer, as her UIM policy provided

4   UIM benefits of $50,000 per person and medical payments coverage in the amount of $5,000. *Id.*

5   The insurance company disputed the value of the payments owed to the insured, offering only

6   $3,000 to settle the insured's claims. *Id.* Plaintiff subsequently brought suit, alleging breach of

7   contract and bad faith for her insurer's refusal to pay UIM benefits. *Id.*

8          In *Tracey*, as here, the defendant insurance company cited the Nevada Supreme Court's

9   discussion in *Pulley* in an effort to bifurcate the contractual claims from the bad faith claims.

10  The district court explained that *Pulley* was inapposite, instructing:

11              Defendant incorrectly cites *Pulley* as holding that the "bad faith tort action
               *does not* occur until after the first case for benefits under the contract had
12             been settled." However, the above quoted language properly cited reads:
               "bad faith tort action *did not* occur until after the first case for benefits under
13             the contract had been settled." Defendant tries to argue that *Pulley* stands for
               the proposition that a bad faith tort action cannot arise until after the breach
14             of contract claim is settled. But that is not what was found in that case. In
               *Pulley*, the bad faith tort did not arise until *after* the breach of contract claim
15             was settled. Therefore, it would have been impossible for the Plaintiff in that
               case to bring a bad faith claim during the first trial because no bad faith had
16             yet occurred. In the instant suit, however, the Plaintiff is arguing that the
               Defendant was acting in bad faith when it handled and denied [his] UIM
17             claim.

18  *Id.* at *5. (internal citations omitted); *see also Drennan v. Maryland Cas. Co.*, 366 F. Supp. 2d

19  1002 (D. Nev. 2005) ("Nevada law does not require [p]laintiffs to establish tortfeasor liability or

20  the extent of damages as a matter of law prior to instituting a claim for bad faith. To find

21  otherwise would require [p]laintiffs to commence two separate suits even if the facts establish

22  that [the insurer] breached the insurance contract and acted in bad faith within the same factual

23  sequence.").

24         Similar to the insured's arguments in *Tracey*, Sherwin "is arguing that the [d]efendant

25  was acting in bad faith when it handled and denied [her] UIM claim." *See Tracey*, 2010 WL

26  3613875 at *5. As was found in *Tracey*, such claims may be brought concurrently and do not

27  require bifurcation.

28

**James C. Mahan**
**U.S. District Judge**

1

*(b)   Rule 42(b) Bifurcation Factors*

2      The court now turns to the three Rule 42(b) factors to determine whether bifurcation is

3   more convenient, avoids prejudice, or will expedite and economize the proceedings.  *See* Fed. R.

4   Civ. P. 42(b).  As explained above, contractual liability is not necessary for Sherwin to proceed

5   with her bad faith causes of action, thus the breach of contract issue is not dispositive of the

6   entire case.  Moreover, Sherwin argues that bifurcation is inconvenient and inefficient, because it

7   will require that the same evidence be presented twice, the same witnesses testify twice, and the

8   same expert witness fees be paid twice.  The court finds that the convenience and efficiency

9   factors favor a unified trial.

10      With regards to prejudice, Infinity contends that bifurcating the trial will avoid unfair

11   prejudice.  Infinity contends that if this court does not bifurcate the trial, Sherwin will freely

12   characterize Infinity's claims handling as just another instance of "financial services companies

13   tak[ing] advantage of the 'little guy.'" Reply Mot. 4:2-3. Infinity paints a picture of the jury rising

14   up against it, passions inflamed by the Occupy Wall Street movement against financial

15   institutions.   Infinity believes that by allowing Sherwin to argue the bad faith causes of action,

16   "the jury will ignore the evidence and punish [Infinity] for the current financial chaos or their

17   personal financial woes." *Id.* at lines 5-6.

18      Infinity's arguments of prejudice appear more akin to allegations that the plaintiff will

19   engage in improper argument seeking to inflame the passions of the jury.  Such arguments and

20   themes are equally applicable to the breach of contract, as well as the bad faith causes of action.

21   In fact, whenever an individual plaintiff is suing a large corporation, such thematic elements

22   might be present.  To insulate the trial from such improper argument and inference, bifurcation is

23   not necessary.  Instead, Infinity should bring an appropriate motion, at the appropriate time,

24   seeking exclusion of whatever argument it deems inappropriate under the Federal Rules of

25   Evidence.

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

1    Accordingly,

2        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Infinity's motion to

3    sever (doc. #84) be, and the same hereby is, DENIED.

4        DATED February 23, 2012.

5

6    _____

7    **UNITED STATES DISTRICT JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 7 -