UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TARA ANN SHERWIN, | 2:11-cv-00043-APG-GWF |
| Plaintiff, | |
| | **ORDER** |
| vs. | |
| INIFINITY AUTO INSURANCE COMPANY, DOES I – X, and ROE CORPORATIONS I – X, inclusive, | |
| Defendant. | |

Before the court is Defendant Infinity Auto Insurance Co.'s Motion for Partial Summary Judgment Regarding Plaintiff's Second, Third, Fourth and Fifth Causes of Action and Claim for Punitive Damages (Dkt. 138). Based on the following reasons, this court GRANTS Defendant's Motion for Partial Summary Judgment.

## BACKGROUND

On March 31, 2009, Plaintiff Tara Ann Sherwin was involved in a two-car motor vehicle accident. (Dkt. 15.) Plaintiff was struck by a car driven by Manuel Flores-Rubio. (Dkt. 141.) Plaintiff sustained "injuries to her shoulders, back, bodily limbs, organs and systems." (Dkt. 15.) On April 2, 2009, Plaintiff visited Dr. Jacob Steckel, a chiropractor, who prescribed a treatment plan for her injuries. (Dkt. 90-9.) On June 9, 2009, Plaintiff visited Dr. Andrew Cash, a surgeon, who recommended surgery for Plaintiff's disk extrusion. (Dkt. 90-12.) Dr. Steckel's July 17, 2009 report indicated that Plaintiff did not want surgery, and was not currently experiencing

1

undue symptoms. (Dkt. 90-11.) Dr. Steckel's final report, dated October 7, 2009, reported Plaintiff was symptom-free. (Dkt. 90-10.)

Flores-Rubio's insurance policy provided $15,000 in liability coverage per person. (Dkt. 141.) Plaintiff presented a claim to Flores-Rubio's insurance carrier, and on January 7, 2010, she accepted his $15,000 policy limit to settle that claim. (Dkt. 90.) Plaintiff was covered by an insurance policy issued by Defendant Infinity Auto Insurance Company ("Infinity"), which provided Uninsured/Underinsured Motorist ("UIM") coverage in the amount of $15,000 per person. (*Id.*) On December 30, 2009, Plaintiff demanded that Infinity pay the $15,000 limit on her UIM coverage; Plaintiff demanded payment within ten days. (Dkt. 90.) Around January 4, 2010, Infinity's adjustor, Justin Gaiser, reviewed Plaintiff's claim and prepared a report. Gaiser's report did not mention Dr. Cash's surgical recommendation, and the parties dispute whether Gaiser considered that recommendation in his assessment of Plaintiff's claim. (Dkt. 141 at Exhibit 1-J.) After reviewing Gaiser's report, Infinity's claims manager Christy Ragland placed a total value on Plaintiff's claim of $18,183. (Dkt. 141 at Exhibit 1-H.) She based that amount on the medical expenses Plaintiff had incurred plus general damages of $6,500.

On January 6, 2010, Infinity offered Plaintiff $3,183, which was Infinity's calculation of Plaintiff's claim minus the $15,000 she received from the tortfeasor's insurer. (Dkt. 90.) Plaintiff refused the offer. (*Id.*) Through counsel, Plaintiff protested that Infinity failed to consider the recommendation of Plaintiff's surgeon, and demanded the full limit of the UIM policy. (Dkt. 90-15.) Infinity told Plaintiff that she could keep the $3,183 without signing a release, and that Infinity would hold the claim open until she either submitted further documentation of the need for surgery, or saw a doctor recommended by Infinity for a second opinion about her back issue. (Dkt. 90-17.)

Plaintiff agreed to see one of the three doctors recommended by Infinity, Dr. Anthony B. Serfustini. Dr. Serfustini determined that Plaintiff's back injury likely was preexisting at the time of the accident, that a portion of her chiropractic treatment had been unnecessary, and that she did not require surgery. (Dkt. 90-21.)

Plaintiff sued Infinity on August 4, 2010 in Nevada state court. (Dkt. 1.) Infinity removed the case to this court. (*Id.*) Plaintiff asserts claims for (1) breach of contract, (2) contractual breach of the implied covenant of good faith and fair dealing, (3) tortious breach of the implied covenant of good faith and fair dealing, (4) bad faith, and (5) unfair trade practices in violation of NRS 686A.310. Infinity's present motion seeks Partial Summary Judgment on the second, third, fourth, and fifth claims, and Plaintiff's claim for punitive damages.

## DISCUSSION

### A. Rule 56 Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994.) Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Because summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996). Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules. *Id.*

### B. Analysis

#### 1. Second, Third, and Fourth Claims: Bad Faith

"An insured may institute a bad faith action against his or her insurer once the insured establishes 'legal entitlement' to an uninsured or underinsured motorist policy and unreasonable conduct by the insurer concerning its obligations to the insureds." *Drennan v. Maryland Cas. Co.*, 366 F. Supp. 2d 1002, 1005–1006 (D. Nev. 2005) (citing *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 384 (Nev. 1993)). An insured has shown "legal entitlement" when the insured "is able to establish fault on the part of the uninsured motorist and the extent of the insured's

3

damages." *Id.* "An insured is not required to obtain a judgment against the tortfeasor before he is entitled to receive proceeds under a UIM policy." *Id.* Nevada law has not outlined a specific standard for determining whether an insured has established the extent of the insured's damages. *Drennan*, 366 F.Supp.2d at 1006.

A claim of breach of the covenant of good faith and fair dealing is, in essence, a claim for bad faith. Insurers have a special relationship with their insureds that arises under the implied covenant of good faith and fair dealing. *Allstate Insurance Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). This duty does not arise out of contract, but rather the covenant is imposed on insurers by law. *U.S. Fidelity & Guaranty Co. v. Peterson*, 540 P.2d 1070 (Nev. 1975). "A violation of the covenant gives rise to a bad-faith tort claim." *Miller*, 212 P.3d at 324. Bad faith is "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Id.* (quoting *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352 (Nev. 1986)).

In order to establish a claim for bad faith in the present context, plaintiffs must establish that (1) her claim was denied, (2) the denial was unreasonable, and (3) the insurer knew it lacked a reasonable basis to deny the claim, or acted with reckless disregard as to the unreasonableness of the denial. *See Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1096 (D. Nev. 2006); *Pemberton*, 858 P.2d at 382 ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy.").

Infinity suggests that Plaintiff cannot assert bad faith because Infinity did not deny her claim; rather, because Infinity paid a portion of her claim, the claim was not denied. Infinity relies upon language in *Schumacher* stating that "State Farm did not deny the claim, it just paid a different value than Schumacher requested. Under the reasoning of *Pioneer* [*Chlor Alkali Company, Inc. v. National Union Fire Insurance Company*, 863 F.Supp. 1237, 1244 (D.Nev.1994)], this makes the complaint more of one based upon statutory violations of NRS 686A.310 than it does a bad faith action." 467 F. Supp. 2d at 1096. This Court will not extend *Schumacher* to hold that any payment on a claim—even a nominal payment—avoids a finding of a denial of the claim, thereby insulating the insurer from bad faith liability. Such a holding

4

might encourage insurers to pay only nominal damages in many cases simply to avoid a bad faith claim. Regardless, in the present case the first prong of the *Schumacher* bad faith test is satisfied because Infinity denied the additional amounts Plaintiff demanded under the policy.

Even though the claim was denied, a bad faith claim is subject to summary judgment "if the defendant demonstrates that there was a genuine dispute as to coverage." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003.) "The key to a bad faith claim is whether or not denial of the coverage was reasonable." *Id.* at 669. Accordingly, if the insurer had a reasonable basis to deny coverage, there can be no finding of bad faith. *Pioneer*, 863 F. Supp. at 1242.

Plaintiff has not presented sufficient evidence to support a finding that Infinity had no reasonable basis to deny coverage, and that Infinity knew it had no reasonable basis to deny coverage. Plaintiff's medical records reflected inconsistent recommendations and intentions regarding her condition and the potential for surgery. Her chiropractor, Dr. Steckel, wrote on July 17, 2009 that Plaintiff was not currently experiencing any undue symptoms and did not want surgery. (Dkt. 90-11.) His final report, dated October 7, 2009, stated that Plaintiff was symptom-free. (Dkt. 90-10.) Infinity offered Plaintiff the chance for a second opinion from Dr. Serfustini, who ultimately opined that surgery and further treatment was unnecessary. Infinity was not unreasonable in offering Plaintiff less than the full amount of the policy. Although Plaintiff feels entitled to the remainder of the UIM policy limit because her surgeon recommended a costly surgery, this entitlement does not render the $3,183 already tendered—20% of the UIM policy limit—a bad faith denial of her claim. Thus, Infinity is entitled to summary judgment on Plaintiff's claims asserting bad faith.

### 2. Fifth Claim: Unfair Trade Practices

Plaintiff also alleges a cause of action under NRS 686A.310 for Infinity's alleged failure to properly settle Plaintiff's insurance claim. (Dkt. 15, ¶ 50.) NRS 686A.310 addresses the manner in which an insurer handles a claim whether or not the claim is denied. *Schumacher*, 467 F. Supp. 2d at 1095. Claims of unfair trade practices and bad faith are not identical causes of action. *Id.* The applicable section of the statute prohibits "[f]ailing to effectuate prompt, fair and

5

equitable settlements of claims in which liability of the insurer has become reasonably clear." NRS 686A.310(e).

As discussed above, Infinity's liability to pay the balance of the policy limit is not reasonably clear. Plaintiff promptly paid $3,183 under the policy, based upon its calculation of Plaintiff's damages. Whether Plaintiff is entitled to any additional amount is a disputed question of fact for the jury, and is the crux of Plaintiff's breach of contract claim. Because it is not reasonably clear that Infinity is liable to pay more under the policy, Plaintiff's allegations do not support a claim of Unfair Trade Practices under NRS 686A.310. Infinity is entitled to summary judgment on this claim.

### 3. Punitive Damages

Plaintiff admits that if her only remaining claim is for breach of contract, she is not entitled to punitive damages. Because the Court has disposed of all other claims, Infinity is entitled to summary judgment on Plaintiff's demand for punitive damages.

### C. Remand

Infinity petitioned to remove this case based on diversity jurisdiction. The federal district courts have original jurisdiction when the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. 28 U.S.C. § 1332(a).

This court is obligated to consider, *sua sponte*, whether it has subject matter jurisdiction. *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004). Because Plaintiff is now limited to her breach of contract claim, recoverable damages in this matter do not meet the $75,000 threshold for diversity jurisdiction. Accordingly, this court no longer has subject matter jurisdiction, and must remand this case to state court for all further proceedings.

### CONCLUSION

The court hereby **GRANTS** Infinity's Motion for Partial Summary Judgment regarding Plaintiff's second, third, fourth, and fifth claims, and claim for punitive damages. Judgment is entered in Infinity's favor on those claims.

6

Because the remaining claim fails to satisfy the amount in controversy required for this court to have jurisdiction, this case is hereby **REMANDED** to the state court from which it was removed.

DATED this 31st day of October, 2013.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE